IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES NULTON                                    :
3020 Spanish Trail
Delray Beach, Florida  33483                    :

    and                                         :

LAETITIA MARCH-NULTON                           :
3020 Spanish Trail
Delray Beach, Florida  33483                    :

    Plaintiffs                                  :

v.                                              :   Civil Action No.:

THE JOHNS HOPKINS HOSPITAL                      :
600 North Wolfe Street
Baltimore, Maryland  21287                      :
    Serve on Resident Agent:
    Peter B. Mancino                            :
    1812 Ashland Avenue, Suite 300
    Baltimore, Maryland  21205                  :

    Defenant                                    :

:    :    :    :    :    :    :    :    :    :    :    :    :    :

## COMPLAINT

COME NOW the Plaintiffs, James Nulton and Laetitia March-Nulton, by their attorneys, Jonathan Schochor, Kerry D. Staton, Joshua Kahn, and Schochor and Staton, P.A. and sues, The Johns Hopkins Hospital, Defenant:

1. The Plaintiffs, James Nulton and Laetitia March-Nulton, are citizens of the United States of America and a citizen and domiciliary of the State of Florida. The Plaintiffs, James Nulton and Laetitia March-Nulton, are over twenty-one (21) years of age.

1

3. The Defendant The Johns Hopkins Hospital owns and operates offices in Baltimore, Maryland. These medical facilities are the location of the tortious acts complained of.

4. At all times referred to herein, the Plaintiff, James Nulton, received medical care at The Johns Hopkins Hospital, as referenced hereinabove.

5. The amount of controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

6. Jurisdiction is conferred upon this Honorable Court based upon diversity of citizenship pursuant to U.S.C., Section 1332, and venue is conferred by virtue of 28 U.S.C., Section 1391.

## COUNT I

COMES NOW the Plaintiff, James Nulton, by his attorneys, Jonathan Schochor, Kerry D. Staton, Joshua Kahn, and Schochor and Staton, P.A. and sues, The Johns Hopkins Hospital, Defenant:

1. The Plaintiff alleges that the Defendant The Johns Hopkins Hospital (hereinafter referred to as "Hospital"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation -- all of which the Defendant failed to do.

2.  The Defendant Hospital, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatment and/or procedures performed, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, failed to diagnose the Plaintiff's condition and was otherwise negligent.

3.  At all times referred to herein, the Defendant Hospital's personnel acted as duly authorized agents and/or employees of the Defendant Hospital, acting within the scope of their respective authority.

4.  As a direct and proximate result of the negligence of the Defendant Hospital's personnel, the Plaintiff suffered unending physical pain, emotional anguish as well as severe disability as is more fully described, hereinbelow.

5.  In 2014, the Plaintiff, James Nulton, was a 60-year-old gentleman with a past medical history significant for renal cancer with a right partial nephrectomy in 2004, scleroderma and Stage IIIC melanoma. Beginning on May 6, 2014, the Plaintiff was followed by healthcare providers at the Defendant Hospital with serial CT scans of the chest following the resection of the melanoma in his right axilla. Between May 6, 2014 and June 21, 2019, the Plaintiff underwent 11 imaging studies, each of which were interpreted by the Defendant's radiologist as without evidence or concern for metastatic disease or any malignancy.

6.  On December 3, 2019, the Plaintiff again underwent a CT scan of the chest with contrast at the Defendant Hospital which was interpreted by the Defendant's radiologist. The

radiologist reported stable, scattered pulmonary nodules measuring up to 4 millimeters. The radiologist also reported a subpleural ground-glass consolidation in the posterior right costophrenic sulcus which was nonspecific but had increased in size since the last exam.

7. On July 16, 2020, the Plaintiff again returned to the Defendant Hospital where he underwent a CT scan of the chest with contrast. The Defendant's radiologist noted the persistent subpleural ground-glass consolidation in the Plaintiff's right lower lobe at the costophrenic sulcus and recognized that it had increased in size from the prior exam. The Defendant's radiologist concluded that these changes represented a likely inflammatory process or atelectasis.

8. The Plaintiff alleges that the Defendant's radiologist breached the applicable standards of care in his interpretation of the July 16, 2020 chest CT. Due to the increase in size of this abnormality in the Plaintiff's right lobe, the Plaintiff alleges that the Defendant's radiologist was mandated by the standards of care to consider interval growth of a malignancy and recommend close follow-up and/or biopsy – which the radiologist negligently failed to do. The Plaintiff alleges that the interval growth of this lesion raised the significant specter of a lung malignancy, particularly in light of the Plaintiff's history, which required close surveillance, immediate evaluation, and a recommendation for a biopsy.

9. On December 8, 2020, the Plaintiff once again returned to the Defendant Hospital where he underwent a CT scan of his chest with contrast. Again, the Defendant's radiologist recognized the persistence of the invasion in the Plaintiff's right lower lobe as well as its increase in size. However, in violation of the standards of care, the Defendant's radiologist simply concluded that there was no evidence of metastatic disease or any malignancy whatsoever. Rather, the radiologist indicated that the lesion represented chronic infection versus atelectasis.

10. Once again, the Plaintiff alleges that the radiologist interpreting the December 8, 2020 chest CT breached the applicable standards of care in failing to recognize the significance of the interval increase in size of the lesion in the Plaintiff's right lobe and in failing to recommend close surveillance and/or tissue biopsy. The Defendant's radiologist knew or, by the exercise of due care, should have known, that an interval increase in size of a lung lesion represents the significant probability of a malignancy which requires tissue diagnosis. Simply put, the Plaintiff avers that the standards of care required the Defendant's radiologist to recommend close surveillance and/or tissue biopsy of this growing lesion – which the Defendant's radiologist negligently failed to do.

11. On August 30, 2021, the Plaintiff presented to a different tertiary care center emergency department with complaints of shortness of breath and right-sided chest pain which increased when lying flat. Indeed, the Plaintiff's shortness of breath as well as atrial fibrillation had been increasing over several weeks and getting progressively worse. As a result, healthcare providers at the tertiary care center performed a repeat CT scan of the chest with contrast. Given the nodularity, the radiologist recommended short-term interval follow-up with a low-dose contrast CT scan in 3 weeks to exclude a possible malignancy in conformity with the standards of care.

12. On September 7, 2021, the chest CT of August 30, 2021 performed at an outside hospital was reviewed by personnel at the Defendant Hospital. At that time, the Defendant's radiologist reported a progressively enlarging opacity in the Plaintiff's right lower lobe now measuring measuring up to 8.6 centimeters compared to 2.3 centimeters on the December 3, 2019 study. Finally, and belatedly, the Defendant's healthcare providers raised a concern for a malignancy.

13. On September 29, 2021, the Plaintiff underwent a PET/CT scan which reported the presence of a right lower lobe hypermetabolic mass-like consolidation that was new since the prior CT and, indeed, had increased in size from the August 20, 2021 chest CT scan. The Defendant's radiologist interpreted that scan as consistent with biopsy-proven primary adenocarcinoma. As well, the PET scan revealed the presence of a hypermetabolic left upper lobe rounded lesion, new since August 30, 2021, felt to represent contralateral metastasis. Finally, there was a small right pleural effusion which was concerning for malignant pleural involvement.

14. On November 12, 2021, the Plaintiff underwent a right lung resection and lymph node dissection. The right lower lobe resection revealed the presence of a 13.4 x 7.5 x 4.2 centimeter moderately differentiated invasive adenocarcinoma, and the lymph node dissection proved positive for one of 16 lymph nodes. As a result, the Plaintiff was diagnosed with a Stage T4N2MX lung adenocarcinoma.

15. On December 21, 2021, the Plaintiff commenced chemotherapy consisting of Carboplatin and Pemetrexed at attenuated doses. As of February 10, 2022, the Plaintiff continued with the diagnosis of Stage IIIB non-squamous cell adenocarcinoma of the lung. Due to his history of scleroderma, the Plaintiff was not a candidate for radiation therapy. As a result, his oncologist recommended that he proceed with continued chemotherapy consisting of Carboplatin AUC, Altima, Folic Acid, and Vitamin B12 supplementation. At the present time, the Plaintiff continues to treat for his adenocarcinoma of the right lung. However, in June of 2022, he underwent a chest CT at the Defendant Hospital which reported interval development of a mixed sclerotic lesion measuring 2.4 centimeters involving the Plaintiff's right 5th rib. At that juncture, it was felt to be indeterminate for metastasis.

16. The Plaintiff alleges that the Defendant's radiologists fell below accepted standards of care in their interpretation and reporting of CT's of the chest on two separate occasions. On each occasion, namely July 16, 2020 and December 8, 2020, the Defendant's radiologists failed to appreciate the significance of the interval growth of lesions which they recognized and reported on the imaging studies. The standards of care obligated the Defendant's radiologists on each occasion to appreciate the significance of the lesions' interval growth, to report the concern for malignancy, and to recommend close follow-up and/or tissue biopsy in accordance with the standards of care. Instead, these radiologists negligently relegated their findings to an inflammatory process or atelectasis.

17. As a result of the negligence of the Defendant's personnel, the Plaintiff's adenocarcinoma in his right lung progressively increased in size from less than 3 centimeters to over 8 centimeters. Concomitantly, the Plaintiff's cancer progressed from Stage I disease to Stage IIIB disease. Simply put, as a result of the negligence of the Defendant's personnel, the Plaintiff's primary lung cancer progressed from a curable stage to an incurable stage, leaving him with an ominous prognosis.

18. It is alleged that the Plaintiff has in the past, is presently, and will in the future continue to suffer severe physical pain, emotional anguish as well as fear and anxiety over his condition. Further, it is alleged that the Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, and other losses and expenses for which claim is made. Finally, it is alleged that the disability has severely compromised his ability to seek and/or hold gainful employment. It is asserted that the damage and disability from which the Plaintiff suffers has essentially destroyed the quality of life he

enjoyed previously. He has suffered permanent disability and is unable to resume all of the activities which he had enjoyed prior to the surgery complained of.

19. The Plaintiff refers to the negligence of these Defendant and each of them as the sole and proximate cause of all of the injuries, damages and permanent disability from which he suffers -- with the Plaintiff being in no way contributorily negligent.

20. The negligence complained of occurred in Baltimore City. Venue is claimed in Baltimore City. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

Jonathan Schochor #7406010179

Kerry D. Staton #8011010366

Joshua Kahn #1012150095
Schochor and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000 - office
(410) 234-1010 - fax
jschochor@sfspa.com
kstaton@sfspa.com
jkahn@sfspa.com
*Attorneys for the Plaintiffs*

## COUNT II

COMES NOW the Plaintiff, Laetitia March-Nulton, by her attorneys, Jonathan Schochor, Kerry D. Staton, Joshua Kahn and Schochor and Staton, P.A. and sues, The Johns Hopkins Hospital, Defendant:

8

1. The Plaintiff incorporates in this Count those facts set forth in Count I hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

2. The Plaintiffs allege they are husband and wife. As the result of the negligence of these Defendant, the Plaintiffs assert that their marriage and marital relationship was interrupted and continues to be interrupted.

3. The severe, unremitting pain from which the Plaintiff, James Nulton, suffers as well as the permanent disability sustained as a result of the negligence of these Defenant, has permanently interrupted and damaged the Plaintiffs' marriage and the Plaintiff, James Nulton's ability to function as a normal husband.

4. The negligence complained of occurred in Baltimore City. Venue is claimed in Baltimore City. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

_____
Jonathan Schochor #7406010179

_____
Kerry D. Staton #8011010366

_____
Joshua Kahn #1012150095
Schochor and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000 - office

(410) 234-1010 - fax
jschochor@sfspa.com
kstaton@sfspa.com
jkahn@sfspa.com

*Attorneys for the Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES NULTON, et al.                :

      Plaintiffs                     :

v.                                  :     Civil Action No.:

THE JOHNS HOPKINS HOSPITAL          :

      Defendant                      :

: : : : : : : : : : : :

## CERTIFICATE OF DISCOVERY

I HEREBY CERTIFY that Interrogatories, Request for Production of Documents, and Notice to Take Deposition will be served along with the Complaint, and that I will retain the original of this document in my possession, without alteration, until the case is concluded in this Court, the time for noting an appeal has expired, and any appeal noted has been decided.

_____
Jonathan Schochor #7406010179
Schochor and Staton, P.A.
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000 - office
(410) 234-1010 - fax
jschochor@sfspa.com

*Attorneys for the Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES NULTON, et al. | : |
| Plaintiffs | : |
| v. | : Civil Action No.: |
| THE JOHNS HOPKINS HOSPITAL | : |
| Defendant | : |

: : : : : : : : : : : : :

## ELECTION FOR JURY TRIAL

The Plaintiffs in this case elect to try their case before a Jury.

*[signature]*

Jonathan Schochor #7406010179

*[signature]*

Kerry D. Staton #8011010366

*[signature]*

Joshua Kahn #1012150095
Schochor and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000 - office
(410) 234-1010 - fax
jschochor@sfspa.com
kstaton@sfspa.com
jkahn@sfspa.com

*Attorneys for the Plaintiffs*

12

| | | |
|---|---|---|
| JAMES NULTON, et al. | : | BEFORE THE |
| Claimants | : | HEALTH CARE |
| v. | : | ALTERNATIVE DISPUTE |
| THE JOHNS HOPKINS HOSPITAL | : | RESOLUTION OFFICE |
| Defendant | : | HCA No.: |

: : : : : : : : : : : : :

## ELECTION FOR WAIVER OF ARBITRATION

COME NOW the Claimants, James Nulton and Laetitia March-Nulton, by their attorneys, Jonathan Schochor, Kerry D. Staton, Joshua Kahn and Schochor and Staton, P.A., and file this Election for Waiver of Arbitration pursuant to the Annotated Code of Maryland, Courts and Judicial Proceedings Article, Section 3-2A-06B. For reasons in support thereof, the Claimants respectfully represent:

1. The Claimants have elected to waive arbitration in the above-captioned case to save time and expense associated herewith.

2. That after filing, this election shall be binding on all parties.

_____
Jonathan Schochor #7406010179

_____
Kerry D. Staton #8011010366

*[signature]*

---

Joshua Kahn #1012150095
Schochor and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000 - office
(410) 234-1010 – fax
jschochor@sfspa.com
kstaton@sfspa.com
jkahn@sfspa.com

*Attorneys for the Claimants*

| | | |
|---|---|---|
| JAMES NULTON, ET AL. | : | BEFORE THE |
| Claimants | : | HEALTH CARE |
| v. | : | ALTERNATIVE DISPUTE |
| THE JOHNS HOPKINS HOSPITAL | : | RESOLUTION OFFICE |
| Defendant | : | OF MARYLAND |
| | : | Case No. |

RECEIVED DEC 1 2022 HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE

## CLAIMANTS' CERTIFICATE OF QUALIFIED EXPERT

I HEREBY CERTIFY and acknowledge that I have reviewed the hospital records, medical records, and other documentation pertaining to the facts and circumstances in the above-captioned case.

I hereby certify and acknowledge that there have been violations of the standards of care by duly authorized agents, servants and/or employees of the Defendant, The Johns Hopkins Hospital which have directly and proximately resulted in injuries and damages to the Claimants.

I certify that I am a board-certified expert in radiology. I further certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught medicine in the Defendant's specialty or a related field of healthcare, or in the field of health care in which the Defendant provided care or treatment to the Claimant, James Nulton, within five (5) years of the date of the alleged act or omission giving rise to the cause of action.

I acknowledge that less than 25% of my professional activities during the twelve (12) months immediately before the filing of this claim have been devoted to activities which directly involve testimony in personal injury claims. My report in the above-referenced case is attached hereto.

_____
Juan Olazagasti, M.D.

THIS DOCUMENT CONTAINS CONFIDENTIAL/RESTRICTED INFORMATION

Jonathan Schochor, Esquire
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202



RECEIVED DEC 1 2022 HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE

Re:   James Nulton

Dear Mr. Schochor:

This is to acknowledge that after a review of the medical records, diagnostic studies and other materials involved in the above-referenced case, I have concluded that there have been violations of the standards of care by duly authorized agents and/or employees of the Defendant The Johns Hopkins Hospital, including but not limited to Harshna Vadvala, M.D., Rafay Ahmed, M.D. and Satomi Kawamoto, M.D. which have directly and proximately resulted in injuries and damages to the Claimants.

It is my opinion that the duly authorized agents, servants and/or employees of the Defendant The Johns Hopkins Hospital, including but not limited to, Harshna Vadvala, M.D., failed to timely diagnose Mr. Nulton's right lung carcinoma on July 16, 2020. It is also my opinion that the duly authorized agents, servants and/or employees of the Defendant The Johns Hopkins Hospital, including but not limited to, Rafay Ahmed, M.D. and Satomi Kawamoto, M.D., failed to timely diagnose Mr. Nulton's right lung carcinoma on December 8, 2020.

It is my opinion that had his lung cancer been timely diagnosed, he would have been referred to oncology for appropriate treatment while the lung cancer was still at an early stage. However, as a result of the delay in diagnosing his lung cancer, Mr. Nulton's malignancy continued to grow, extend and metastasize. As such, Mr. Nulton has been since diagnosed with a Stage IIIB adenocarcinoma of the right lung.

I certify that I am a board-certified expert in radiology. I further certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught medicine in the Defendants' specialty or a related field of healthcare, or in the field of health care in which the Defendants provided care or treatment to the Claimant, within five (5) years of the date of the alleged act or omission giving rise to the cause of action.

Accordingly, I have concluded that the case filed before the Health Care Alternative Dispute Resolution Office of Maryland is meritorious. I also acknowledge that less than twenty-five percent of my annual professional time involves testimony in personal injury claims.

This report represents a broad summary of my opinions for purposes of certifying the merit of this matter. I specifically reserve the right to modify, amend and/or supplement my opinions as further information about this case is made available to me through the discovery process.

Very truly yours,

Juan Olazagasti, M.D

RECEIVED DEC 1 2022 HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE

| | | |
|---|---|---|
| JAMES NULTON, ET AL. | : | BEFORE THE |
| Claimants | : | HEALTH CARE |
| v. | : | ALTERNATIVE DISPUTE |
| THE JOHNS HOPKINS HOSPITAL | : | RESOLUTION OFFICE |
| Defendant | : | OF MARYLAND |
| | : | Case No. |

## CLAIMANTS' CERTIFICATE OF QUALIFIED EXPERT

I HEREBY CERTIFY and acknowledge that I have reviewed the hospital records, medical records, and other documentation pertaining to the facts and circumstances in the above-captioned case.

I hereby certify and acknowledge that the violations of the standards of care identified by the Claimants' standard of care experts against duly authorized agents, servants and/or employees of the Defendant The Johns Hopkins Hospital have directly and proximately resulted in injuries and damages to the Claimants.

I certify that I am a board-certified expert in internal medicine with a subspecialty in medical oncology. I further certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught medicine in the Defendant's specialty or a related field of healthcare, or in the field of health care in which the Defendant provided care or treatment to the Claimant's Decedent, Thomas Spriesterbach, within five (5) years of the date of the alleged act or omission giving rise to the cause of action.

I acknowledge that less than 25% of my professional activities during the twelve (12) months immediately before the filing of this claim have been devoted to activities which directly involve testimony in personal injury claims. My report in the above-referenced case is attached hereto.

_____
Neel Shah, M.D.

THIS DOCUMENT CONTAINS CONFIDENTIAL/RESTRICTED INFORMATION

Jonathan Schochor, Esquire
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202



Re:   James Nulton

Dear Mr. Schochor:

It is my understanding that the Claimants' standard of care experts have opined that there were breaches and/or violations in the accepted standards of care by duly authorized agents and/or employees of the Defendant The Johns Hopkins Hospital, including but not limited to Harshna Vadvala, M.D., Rafay Ahmed, M.D. and Satomi Kawamoto, M.D. which have directly and proximately resulted in injuries and damages to the Claimants. This is to acknowledge that after a review of the medical records and other materials involved in the above-referenced case, I have concluded that had Mr. Nulton been timely diagnosed and treated for his right lung cancer following the July 16, 2020 and December 8, 2020 CT scans of the chest that he would have been successfully treated with a probability of survival. As a result of the delay in diagnosis, Mr. Nulton's right lung cancer was allowed to grow and metastasize resulting in a Stage IIIB terminal prognosis.

I certify that I am a board-certified expert in internal medicine with a subspecialty in medical oncology. I further certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught medicine in the Defendants' specialty or a related field of healthcare, or in the field of health care in which the Defendants provided care or treatment to the Claimant, within five (5) years of the date of the alleged act or omission giving rise to the cause of action.

Accordingly, I have concluded that the case filed before the Health Care Alternative Dispute Resolution Office of Maryland is meritorious. I also acknowledge that less than twenty-five percent of my annual professional time involves testimony in personal injury claims.

This report represents a broad summary of my opinions for purposes of certifying the merit of this matter. I specifically reserve the right to modify, amend and/or supplement my opinions as further information about this case is made available to me through the discovery process.

Very truly yours,

Neel Shah, M.D.

UPON COMPLETION OF YOUR CA~~ ~~, ~~CIRCUIT~~ COURT OR U.S. DISTRICT COURT
PLEASE NOTIFY THIS OFFICE OF THE OUTCOME OF THE NAMED PHYSICIANS, NURSE, ETC.
SO THAT WE MAY KEEP UPDATED RECORDS FOR THE GENERAL PUBLIC

---

| | | |
|---|---|---|
| JAMES NULTON and<br>LAETITIA MARCH-NULTON | * <br> * | BEFORE THE |
| | * | HEALTH CARE |
| Claimants | * | |
| | * | ALTERNATIVE DISPUTE |
| | * | |
| v. | * | RESOLUTION OFFICE |
| | * | |
| | * | |
| THE JOHNS HOPKINS HOSPITAL | * | |
| | * | |
| | * | |
| Health Care Provider | * | HCA No.: 2022-443 |
| | * | |

---

### ORDER OF TRANSFER

The Claimants, by and through counsel, having elected a Waiver of Arbitration under the provisions of Annotated Code of Maryland, Courts and Judicial Proceedings, Article, § 3-2A-06B, it is this ____ day of _____, 2022, by the Health Care Alternative Dispute Resolution Office,

ORDERED, that this case shall be and is hereby, transferred to the United States District Court, or to the Circuit Court of the appropriate venue.

_____
HARRY L. CHASE, DIRECTOR
Health Care Alternative Dispute Resolution Office

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the above ORDER OF TRANSFER have been mailed, postage prepaid, to all counsel.

_____
HARRY L. CHASE, DIRECTOR